## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

| | | |
|---|---|---|
| **FRED D. DOUTY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 2:13-32832** |
| | ) | |
| **JIM RUBENSTEIN,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's second "Motion to Compel Discovery" (Document No. 65), filed on January 30, 2015. Having thoroughly considered the issues raised by this Motion, the undersigned concludes that Plaintiff's Motion (Document No. 65.) should be granted in part and denied in part.

### STANDARD

The Federal Rules of Civil Procedure contemplate that in conjunction with disclosure, civil discovery is a process of elucidation and clarification of facts and circumstances relevant to claims and defenses as presented in pleadings through which the claims and defenses are validated, defined and shaped and issues are sharpened and refined for consideration at the dispositive motion stage and trial of a civil case. The civil discovery process is to be engaged in cooperatively. Violation of the Rules undermines the process.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides as follows:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery

appears reasonably calculated to lead to the discovery of admissible evidence.

Discovery is generally limited therefore to nonprivileged information which is relevant to any party's claims or defenses, and relevant information is information which is admissible at trial or might reasonably lead to the discovery of information which is admissible at trial. See State ex rel. Erie Ins. Property and Cas. Co. v. Mazzone, 218 W.Va. 593, 596, 625 S.E.2d 355, 358 (2005)("A threshold issue regarding all discovery requests is relevancy. This is so because '[t]he question of the relevancy of the information sought through discovery essentially involves a determination of how substantively the information requested bears on the issues to be tried.'" quoting Syllabus Point 4 of State Farm Mut. Auto. Ins. Co. v. Stephens, 188 W.Va. 622, 425 S.E.2d 577 (1992).)

When parties request relevant nonprivileged information in Interrogatories under Rules 33, their request "must be answered:(A) by the party to whom they are directed." Fed.R.Civ.P. 33(b)(1). Federal Rule of Civil Procedure 33(b)(3) through (5) state further as follows:

> **(3)** *Answering Each Interrogatory.* Each Interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.
> **(4)** *Objections.* The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.
> **(5)** *Signature.* The person who makes the answers must sign them, and the attorney who objects must sign any objections.

"Generic non-specific objections will not suffice when posed in response to reasonable Interrogatories. Objections to reasonable Interrogatories must be specific to each Interrogatory and explain or demonstrate precisely why or how the party is entitled to withhold from answering." Vica Coal Co., Inc., v. Crosby, 212 F.R.D. 498, 503 (S.D.W.Va. 2003). The Court requires strict adherence to these Rules. Saria v. Massachusetts Mutual Life Insurance Company, 228 F.R.D. 536, 538 (S.D.W.Va. 2005).

2

When parties request relevant nonprivileged information in a Request for Production or Inspection of Documents under Rule 34, "[t]he party to whom the request is directed must respond in writing . . .." Fed.R.Civ.P. 34(b)(2)(A). Federal Rule of Civil Procedure 34(b)(2)(B) and (C) provide as follows:

> **(B)** *Responding to Each Item.* For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons.
> **(C)** *Objections.* An objection to part of a request must specify the part and permit inspection of the rest.

Objections to Rule 34 requests must be stated specifically, and boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable. Frontier-Kemper Constructors, Inc., v. Elk Run Coal Company, Inc., 246 F.R.D. 522, 528 - 529 (S.D.W.Va. 2007).

The Rules anticipate that each objection to a discovery request will state precisely why the request is objectionable in view of the claims and defenses presented in the litigation. In most if not all cases, an objection to a discovery request in conformity with the Rules will contain (1) a recital of the parties' claims and defenses, (2) a summary of the applicable statutory and/ or case law upon which the parties' claims and defenses are predicated including the elements of each claim or defense, (3) a discussion of Court decisions considering the breadth or scope of discovery and any limitations upon discovery in the same or a similar type of case and (4) a statement respecting how and/or why the request seeks information which is irrelevant or will not likely lead to the discovery of relevant information or is vague, overly broad, burdensome or interposed for an improper purpose. Failure to state objections specifically in conformity with the Rules will be regarded as a waiver of those objections. Sabol v. Brooks, 469 F.Supp.2d 324, 328 (D.Md. 2006).

Pursuant to Rule 36, "[a] party may serve on any other party a written request to admit, for

purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed.R.Civ.P. 36(a)(1). Federal Rule of Civil Procedure 36(a)(4) and (5) provide as follows:

> **(4) Answer.** If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonably inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

> **(5) Objections.** The grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial.

Additionally, Rule 36(a)(6) allows a party who has served a request for admission to move the court "to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served." Fed.R.Civ.P. 36(a)(6).

Federal Rule of Civil Procedure 37(a)(1) provides that if a party fails to cooperate in discovery, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Rule 37(a)(4) provides that an incomplete answer or response "must be treated as a failure to . . . answer, or respond." Rule 37 (a)(5)(A) – (C) provide as follows:

> **(A)** *If the Motion is Granted (or Disclosure or Discovery is Provided After Filing).* If the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney

4

advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

    (i)    the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

    (ii)    the opposing party's nondisclosure, response, or objection was substantially justified; or

    (iii)    other circumstances make an award of expenses unjust.

**(B)** *If the Motion is Denied.* If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

**(C)** *If the Motion is Granted in Part and Denied in Part.* If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses of the motion.

## <u>ANALYSIS</u>

### A.    Request for Admission Nos. 12 and 13.

REQUEST FOR ADMISSIONS NO. 12. Admit the plaintiff produced authentic documents marked exhibit's P - S, attached with his Amended Complaint, from medical service Wexford Health, Inc.

RESPONSE: This particular request for admission is incorrectly directed to this Defendant. This Defendant has no authority or permission to review, analyze or comment upon the Plaintiff's medical records at any time.

REQUEST FOR ADMISSIONS NO. 13. Admit the documents stated in Request No. 12, above, both nurses and/or doctors diagnosed the plaintiff with first degree chemical burns.

RESPONSE: See Response to Request for Admission No. 12.

In his Motion to Compel, Plaintiff first argues that Defendant Andrew Hudson's response

to Plaintiff's Requests for Admission is insufficient and needs to be supplemented. (Document No.

5

65.)

In Response, Defendants argue that Defendant Hudson does not have "the opportunity to touch, review or interpret any of the Plaintiff's medical records." (Document No. 84, p. 2.) Defendants note that Exhibits P - S are medical records and "[t]hese medical records are under the care, custody and control of Wexford Health, Inc., a vendor of the WV DOC." (Id.) Defendants contend that Defendant Hudson "has no background or understanding to enable him to respond to Request No. 12 admitting that Exhibits P - S are authentic documents." (Id.) Additionally, Defendants claim that Defendant Hudson "has no expertise in which to admit Request for Admission No. 13 concerning an alleged diagnosis that the Plaintiff sustained first degree chemical burns." (Id.) Defendants further note that correctional officers are not required to review or interpret medical records as part of their job responsibilities. (Id.) Defendants advise Plaintiff that "Wexford Health, Inc., may admit the authenticity of such documents or interpret what the documents reveal." (Id.) Defendants, therefore, argue that Defendant Hudson should not be required to supplement his responses to No. 12 and 13 of Plaintiff's Requests for Admission. (Id.)

In Reply, Plaintiff argues that "prison officials cannot claim they do not know the answer unless they state that they have made a good-faith effort to secure the information, or materials necessary to provide an admit or deny to the request." (Document No. 95, p. 1.) Plaintiff states that he "has provided defendants with the documents in question," and "defendants did not make a good faith effort to secure the information to provide complete answers." (Id.) Plaintiff contends that Defendants could have taken the medical records to Wexford Health, Inc., to have them state whether they are authentic. (Id.) Plaintiff further asserts that Defendants could have spoken directly with the health care professional that made the diagnosis. (Id.)

The undersigned finds Plaintiff's above objection without merit. Rule 36(a)(4) provides that "[t]he answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. Rule 36(a)(4). Clearly, Plaintiff seeks Defendant Hudson's admission of specific facts that are outside Defendant Hudson's knowledge and expertise. It is undisputed that Defendant Hudson is a Correctional Officer at MOCC. Clearly, the authenticity of medical records or a medical diagnosis would be outside the expected knowledge, experience, and expertise of a correctional officer. Defendant Hudson is not required to review Plaintiff's medical records or contact Plaintiff's health care providers so that he may answer Plaintiff's Request for Admission concerning specific facts that are outside his knowledge and expertise as a correctional officer. It is hereby **ORDERED** that Plaintiff's Motion to Compel as to Request for Admission Nos. 12 and 13 is **DENIED**.

**B.    Third Request for Production of Documents No. 3.**

> REQUEST FOR PRODUCTION NO. 3. Any and all documents from your oleoresin capsicum and tear gas supplier from January 1, 2012, to the date of your response.
>
> RESPONSE: Sergeant Richard Toney is in charge of ordering oleoresin capsicum for the West Virginia Division of Corrections. At this time, a search is still being made by these Defendants as to what types of documents, if any, might be made available to the Plaintiff in this civil action. Accordingly, this particular request for production of documents will be supplemented as soon as practicable, if documents responsive to this request are located.

In his Motion to Compel, Plaintiff argues that the requested information is relevant. (Document No. 65, pp. 4 - 5.) Plaintiff explains that the information is relevant as to the following: (1) "[I]s there a contract between MOCC and/or WVDOC and the oleoresin capsicum/tear gas supplier, and if so, exactly what are those stipulations?;" (2) Was the use of said chemicals more

prevalent at certain time than others; and if so, were the policies or customs martial law, state of emergency, and/or no efforts to temper in affect during those times;" and (3) "[W]hat are the contents in these chemicals - extracts used in pepper sprays varies widely among manufacturers, from 12% to 12.6% - and is there any directions, instructions, and/or warnings directly related to the discharge of canister contents." (Id., p. 5.) Plaintiff explains that evidence of the habit of a person or routine practice of an organization is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice. (Id.)

In Response, Defendants argue that it is not appropriate for them to respond further to Plaintiff's above Request for Documents. (Document No. 84, pp. 2 - 3.) Defendants explain that they disclosed to Plaintiff that Sergeant Richard Toney is in charge of ordering oleoresin capsicum for the WVDOC. (Id., p. 2.) Defendants state that they "are at a loss as to what type of documents should be supplied to Plaintiff in this instance." (Id.) Although Plaintiff "lists numerous reasons why he believes he ought to be entitled to receive various types of documents involving oleoresin capsicum," Defendants argue that "Plaintiff's request for any and all documents concerning oleoresin capsicum is so broad and ambiguous that it is impossible for these defendants to respond to this discovery request in a cogent manner." (Id., p. 3.)

In Reply, Plaintiff argues that Defendants acknowledge they purchased oleoresin capsicum from Aerko International. (Document No. 95, p. 2.) Plaintiff states that Aerko's website states that it is a "contract aerosol manufacturer." (Id.) Finally, Plaintiff argues that he is entitled to any handling or warning instructions that are relevant to the oleoresin capsicum. (Id.)

Regarding Plaintiff's Request for Production No. 3 seeking documents from Defendants' oleoresin capsicum and tear gas supplier, the Court deems certain portions of the request to be

relevant. In his Motion, Plaintiff explains that he is seeking a copy of Defendants' contract with the oleoresin capsicum supplier and a copy of the ingredients and product warnings from the oleoresin capsicum supplier. The undersigned finds that the oleoresin capsicum supplier's ingredient list and product warning are relevant to Plaintiff's claim and should be produced. The Court notes that Plaintiff alleges that he suffered injuries, such as first degree burns, due to Defendants' use of the oleoresin capsicum spray. To the extent Plaintiff is requesting a copy of the contract between the WVDOC/SRJ and the oleoresin capsicum supplier, the Court finds such a contract to be irrelevant. To the extent Plaintiff generally requests "any and all documents from your oleoresin capsicum and tear gas supplier," the Court finds the request to be overly broad and irrelevant. It is therefore hereby **ORDERED** that Plaintiff's Motion to Compel as to the Third Request for Production Number 3 is **GRANTED in part** and **DENIED in part**. Defendants shall produce the oleoresin capsicum supplier's ingredient list and product warning.

**C.    Third Request for Production of Documents No. 4.**

> REQUEST FOR PRODUCTION NO. 3. The log books, and document, from Mount Olive Correctional Complex, Quilliams II unit, rotunda (tower) from the date September 1, 2013, through October 1, 2013.
>
> RESPONSE: The log book for Quilliams II unit from September 1, 2013, through October 1, 2013, has not been located. Furthermore, even if that particular log book is located, it may contain information pertaining to other inmates which this Plaintiff is not entitled to receive. Accordingly, this particular request for production will be supplemented as soon as practicable, in a redacted format if the subject log book is located.

In his Motion to Compel, Plaintiff argues that the request information is relevant. (Document No. 65, pp. 6 - 7.) Plaintiff explains "defendants are required to ensure that appropriate permanent logs are implemented and maintained to thoroughly document all inmate and staff movement, activities and incidents." (Id., p. 6.) Plaintiff contends that the "'daily log books' identify

ranks/names of officers on duty, all inmate and staff movement, unit activities and incidents/unusual occurrences will be logged." (Id.) Plaintiff asserts that the "original [daily log book] is turned in at Central Control at the end of each shift then turned over to the Records Office for filing. (Id.) Plaintiff states that the"'pass down log books' include post inventory, incidents/unusual occurrences and any special orders or notices to be logged." (Id.) Plaintiff argues that the "segregation commander turns in completed pass down log books to the Records Office for filing." (Id.) Plaintiff claims that "other log books' are those approved by the segregation commander and associate warden of security" and "the segregation commander turns in completed 'other' logs to the Records Office for filing. (Id.) Finally, Plaintiff states that he "objects to defendants' redacting and altering those aforementioned log books and requests this Court for in-camera review first." (Id.)

In Response, Defendants argue that they "have responded that the log book for Quilliams II unit from September 1, 2013 through October 1, 2013 has not been located." (Document No. 84., p. 3.) Defendants state that they "cannot produce a log book which has not been located." (Id.)

In Reply, Plaintiff contends that Defendants are "unlawfully obstructing plaintiff's access to evidence and/or have unlawfully altered, destroyed, or concealed these log books or other material having potential evidentiary value." (Document No. 95, p. 2.)

Concerning the "daily log books," Plaintiff contends that the log books are turned in at Central Control at the end of each shift and then turned over to the Records Office for filing. Concerning the "pass down log books" and "other log books," Plaintiff contends that the segregation commander turns in completed log books to the Records Office for filing. The undersigned finds that Defendants should conduct a further search to determine whether these log books exist. If no such log books exist, or if such log books existed at one time but no longer exist, the Defendants are

**ORDERED** to respond with an explanation as to the status of such evidence. To the extent the log books exist, the undersigned finds that they are relevant and Defendants are **ORDERED** to produced them for *in camera* review. The undersigned finds, however, that any information contained in the log books concerning other inmates is not relevant to Plaintiff's claims and should be redacted. Defendants shall produce a copy of the logs books, a proposed redacted copy and an un-redacted copy, for the Court's *in camera* review.

**D.    Request for Production of Documents Nos. 6, 7, 8, 9.**

REQUEST FOR PRODUCTION NO. 6. Any and all documents from Mount Olive Correctional Complex, Quilliams II unit recreation yard insofar that they show the plaintiff's image on said recreation yard from the dates September 1, 2013, through September 30, 2013.

RESPONSE: There are no documents responsive to this particular request for production of documents.

REQUEST FOR PRODUCTION NO. 7. Any and all documents in Mount Olive Correctional Complex, Quilliams II unit multipurpose room insofar that they show the plaintiff's image on the dates September 5, 2013, and September 16, 2013.

RESPONSE: There are no documents responsive to this particular request for production of documents.

REQUEST FOR PRODUCTION NO. 8. Any and all documents from Mount Olive Correctional Complex, Quilliams II unit, non-contact and contact visit rooms on the date September 16, 2013, insofar that they show plaintiff's image.

RESPONSE: There are no documents responsive to this particular request for production of documents.

REQUEST FOR PRODUCTION NO. 9. Any and all documents from Mount Olive Correctional Complex, corridor's leading to and from Quilliams II unit, and correctional hearing officer Brian Greenwood's office on the dates September 30, 2013, and October 17, 2013, insofar as they show plaintiff's image.

RESPONSE: There are no documents responsive to this particular request for production of documents.

In his Motion to Compel, Plaintiff argues that the request information is relevant. (Document No. 65, p. 8.) Plaintiff explains the foregoing is relevant because : (1) "videos could show the severity of plaintiff's injuries, or at least show those injuries;" (2) "establish that plaintiff was taken to the multipurpose room by Officers Ward and Williams where pictures were taken to document his injuries for evidence;" (3) "that defendants Hudson, Hypes, Hess, and Wimmer observed the injuries in question;" and (4) "insidious intent by defendant Hudson on September 30, 2013." (Id.) Plaintiff disagrees with Defendants that no documents responsive to his request exists. (Id.) Plaintiff contends that "Mount Olive is a maximum security facility with numerous video cameras throughout the complex, which are in plain sight for inmates, staff members, and citizen's to see and are not hidden." (Id.)

In Response, Defendants state that they "stand by their responses to these requests for production of documents." (Document No. 84, p. 4.) Defendants continue to argue as follows: (1) "There are no documents showing plaintiff's image in the recreation yard from September 1, 2013, through September 30, 2013;" (2) "There are no documents showing the plaintiff's image in the Quilliams II unit multipurpose room from September 5, 2013, to September 16, 2013;" (3) "There are no documents showing the Plaintiff's image in non-contact and contact visiting rooms on September 16, 2013;" and (4) "There are no documents showing the plaintiff's image in the corridor leading to and from Quilliams II unit and Correctional Hearing Officer Brian Greenwood's office on September 30, 2013, and October 17, 2013." (Id.) Defendant contends that they "cannot produce documents which the plaintiff has requested which pursuant to defendant's search do not exist." (Id.) Defendants, however, stated that "if the Court so requires, the defendants will undertake an additional search to determine if these requested items can be located, and will have an appropriate

representative sign an affidavit regarding the scope and breadth of the search." (Id.)

In Reply, Plaintiff requests that sanctions be imposed if "during the course of this action it becomes known that the defendants unlawfully altered, destroyed, or concealed those security videos." (Document No. 95, p. 3.)

The undersigned finds that Defendants have appropriately responded to Request for Production Nos. 6, 7, 8, and 9. Defendants state that they have conducted a search for the requested documents, but have been unable to find any document responsive to Plaintiff's request. The undersigned notes that defense counsel properly signed the discovery responses certifying that his responses were complete and correct. Defendants, however, do not dispute Plaintiff's claim that the jail is monitored by security cameras at all times. The undersigned finds that Defendants should conduct a further search to determine whether any photographs or videos exist. To the extent the photographs or videos exist, the undersigned finds that they are relevant and Defendants are **ORDERED** to produced them. If no such photographs or videos exist, or if such photographs or videos existed at one time but no longer exist, the Defendants are **ORDERED** to respond with an explanation as to the status of such evidence. If the Defendants wish to seek the entry of a Protective Order concerning these photographs or videos, they should submit a proposed Protective Order for entry by the Court.

The undersigned acknowledges that the West Virginia Division of Corrections' policy provides that audio and video material received by inmates in the mail from an attorney will not be processed or provided to the inmate. Specifically, the policy memorandum provides as follows:

> After receiving advice from Senior Assistant Attorney General, Charles Houdeyschell, Jr., our policies regarding receipt of audio/video material from an inmate's attorney and the court system have changed as follows:

**Audio/Video material received in the mail from an attorney:**
This material will no longer be processed. Instead, the material will be returned to the attorney, advising him/her that arrangements may be made to meet with the inmate personally to review the material. The attorney must take the audio/video material with him/her when leaving the facility.

**Audio/Video material received in the mail from a court:**
These items may be picked up at the State Shop after the package is opened in the inmate's presence to verify that they were mailed for a court. The material will be documented on the inmate's Personal Property record and will be counted as part of allowable compact disks.

Therefore, it is hereby **ORDERED** that defense counsel shall hand-deliver a copy of the DVD in question, with proper labeling to indicate that the DVD is evidence in Civil Action No. 2:13-cv-32832 in the United States District Court for the Southern District of West Virginia, and shall review the DVD with the Plaintiff in person, at some point prior to the conclusion of the discovery period. Thereafter, in accordance with the policy memorandum discussed above, it is hereby **ORDERED** that the DVD shall be documented as part of the Plaintiff's Personal Property in the State Shop, and the Defendants or their agents at MOCC, shall provide the Plaintiff with access to review the DVD as necessary during the course of this litigation.

**E.      Request for Production of Documents Nos. 10 and 11.**

REQUEST FOR PRODUCTION NO. 10. Any and all documents concerning the extraction video of inmate Samuel Ramsey # 49810, from Quilliams II unit, pod 4, cell 412, on the date September 1, 2013.

RESPONSE: There is no extraction video of inmate Samuel Ramsey # 49810 from Quilliams II unit, pod 4, cell 412, on September 1, 2013. Furthermore, even if such an extraction video existed, the Plaintiff in this civil action would not be entitled to receive the same as it pertains to other inmates and not himself.

REQUEST FOR PRODUCTION NO. 11. Any and all documents concerning the extraction video of inmate Roger Dwayne Smith # 44876, from Quilliams II unit, pod 4, cell 413, on the date September 1, 2013.

RESPONSE: There is no extraction video of inmate Roger Dwayne Smith # 44876

14

from Quilliams II unit, pod 4, cell 413, on September 1, 2013. Furthermore, even if such an extraction video existed, the Plaintiff in this civil action would not be entitled to receive the same as it pertains to other inmates and not himself.

In his Motion to Compel, Plaintiff argues that the extraction videos concerning Inmate Ramsey and Inmate Smith are relevant. (Document No. 65, p. 10.) Plaintiff alleges that the videos contain "evidence directly related the facts and defenses in this case." (Id.) Plaintiff explains that the videos prove that he was "quoting the State and U.S. Constitutions," not yelling obscenities as stated by Defendants. (Id.) Plaintiff states that Defendant Wimmer filed an Incident Report charging Plaintiff with "a rule violation alleging plaintiff was yelling and screaming obscenities while defendants extracted Inmate Smith #44876 from his cell." (Id.) Plaintiff alleges that "after correctional hearing officer Brian Greenwood reviewed the video in question, he found the plaintiff 'not guilty' because that video clearly showed plaintiff only quoted the Constitutions." (Id.) Plaintiff further states that the "video established that it was defendant Wimmer who yelled sexual threats to the plaintiff." (Id.) Plaintiff further argues that "defendants are not being frank when they claim those requests for production do not exist." (Id.) In support, Plaintiff attach a copies of an Incident Report involving Inmate Roger Smith dated September 1, 2013. (Document No. 65-1, p. 8.)

In Response, Defendants argues that Plaintiff is not entitled to the extraction videos of Inmates Samuel Ramsey and Roger Dwayne Smith. (Document No. 84, p. 6.) Defendants explain that "[i]t is the policy of the Mount Olive Correctional Complex that it does not produce information concerning any aspect of one inmate's incarceration to another inmate." (Id.) Defendants further argue that there are no extraction videos regarding Inmate Roger Dwayne Smith and Inmate Samuel Ramsey. (Id.)

In Reply, Plaintiff requests that sanctions be imposed if "during the course of this action it

becomes known that the defendants unlawfully altered, destroyed, or concealed those security videos." (Document No. 95, p. 3.)

The undersigned finds that Plaintiff's Motion to Compel should be granted as to the extraction video of Inmate Smith and denied as to the extraction video of Inmate Ramsey. Based upon a review of Plaintiff's claims and a review of the record, the undersigned finds that the extraction video of Inmate Smith is relevant. A review of the Incident Report prepared by Joe Wimmer on September 1, 2013 (DOUTY 0005) reveals that Plaintiff was allegedly yelling obscenities during the extraction of Inmate Smith. A further review of the record reveals that Andrew Hudson deployed two one second burst of oleoresin capsicum because Plaintiff was yelling obscenities causing a disturbance within the pod. (DOUTY 0007). Plaintiff contends that he was not yelling obscenities during Inmate Smith's extraction and Defendants used excessive force by deploying the bursts of oleoresin capsicum. Therefore, the undersigned finds that the video of Inmate Smith's extraction is clearly relevant. The undersigned notes that Plaintiff fails to explain how or why the video of Inmate Ramsey's extraction is relevant and his conclusory claim of relevancy is insufficient. According, it is hereby **ORDERED** that Plaintiff's Motion to Compel is **DENIED** as to Request for Production No. 10 and **GRANTED** as to as to Request for Production No. 11.

Concerning Defendants' claim that the extraction video of Inmate Smith does not exist, the Court **ORDERS** Defendants to conduct a further search. A review of the Incident Report involving Inmate Roger Smith dated September 1, 2013, reveals that the extraction and decontamination of Inmate Smith was videoed by Nicholas Boychuck. (Document No. 65-1, p. 8.) If no such video exists, or if such photographs or videos existed at one time but no longer exist, the Defendants are

16

**ORDERED** to respond with an explanation as to the status of such evidence. To the extent the video concerning Inmate Smith exists, Defendants are **ORDERED** to produced it by hand-delivering a copy of the DVD in question, with proper labeling to indicate that the DVD is evidence in Civil Action No. 2:13-cv-32832 in the United States District Court for the Southern District of West Virginia, and shall review the DVD with the Plaintiff in person, at some point prior to the conclusion of the discovery period. Thereafter, in accordance with the policy memorandum discussed above, it is hereby **ORDERED** that the DVD shall be documented as part of the Plaintiff's Personal Property in the State Shop, and the Defendants or their agents at MOCC, shall provide the Plaintiff with access to review the DVD as necessary during the course of this litigation. If the Defendants wish to seek the entry of a Protective Order concerning the video, they should submit a proposed Protective Order for entry by the Court.

**F.      Request for Production of Documents Nos. 12, 13, and 14.**

REQUEST FOR PRODUCTION NO. 12. Any and all documents concerning Plaintiff's violation report hearing for docket no. MOC-13-0914-E; and MOC-13-0915-E, conducted on the date September 16, 2013.

RESPONSE: Incident reports for MOC-13-0914-E and MOC-13-0915-E, as they pertain to the Plaintiff herein are attached hereto, respectively, as Exhibits B and C.

REQUEST FOR PRODUCTION NO. 13. Any and all documents concerning Plaintiff's violation report hearing for docket no. MOC-13-1028-G, conducted on September 20, 2013.

RESPONSE: The incident report for MOC-13-1028-G, as it pertains to the Plaintiff herein is attached hereto as Exhibit D.

REQUEST FOR PRODUCTION NO. 14. Any and all documents concerning Plaintiff's violation report hearing for docket no. MOC-13-1080-G; and MOC-13-1081-G, conducted on the date October 17, 2013.

RESPONSE: The incident report for MOC-13-1080-G and MOC-13-1081-G, as they pertain to the inmate herein are attached hereto as Exhibits E and F.

In his Motion to Compel, Plaintiff complains that although "defendants did produce paper documents, they have failed to produce the audio-recordings from the aforementioned requests." (Document No. 65, p. 11.) Plaintiff contends that "[t]hose records are relevant evidence in which plaintiff has direct communication, verbally, with defendants Hudson, Hypes, and Wimmer regarding facts and defenses at issue. (Id.)

In Response, Defendants argue that they have produced the incident reports for all the incident numbers requested by Plaintiff. (Document No. 84, p. 6.) Defendants explain that "[t]hese paper documents set forth in detail what transpired between the plaintiff and various correctional officers during the requested time period." (Id.) Defendants state that "plaintiff did not request audio recordings in his request for production of documents, and it is not the policy of the Mount Olive Correctional Complex to produce audio records to an incarcerated inmate." (Id.)

In Reply, Plaintiff argues that Policy Directive 325.00(V)(B)(18) provides that "the hearing proceedings shall be recorded by a stenographer, magnetic tape, or digital recording" and "hearing recordings shall be retained for a period of two (2) years." (Document No. 95, p. 3.) Plaintiff alleges that the hearings "are well within this two year retaining period" and "defendants are in possession of them." (Id.)

Although Plaintiff failed to specifically request the audio recordings, the undersigned notes that Plaintiff is proceeding *pro se* and should be granted some leeway. The undersigned finds that the audio recordings are relevant as they involve the underlying facts concerning Plaintiff's excessive force and battery claims. According, it is hereby **ORDERED** that Plaintiff's Motion to Compel is **GRANTED** as to Request for Production Nos. 12, 13, and 14. Defendants are **ORDERED** to produced the audio recordings by hand-delivering a copy of the recording in

18

question, with proper labeling to indicate that the audio recording is evidence in Civil Action No. 2:13-cv-32832 in the United States District Court for the Southern District of West Virginia, and shall review the audio recording with the Plaintiff in person, at some point prior to the conclusion of the discovery period. Thereafter, in accordance with the policy memorandum discussed above, it is hereby **ORDERED** that the audio recording shall be documented as part of the Plaintiff's Personal Property in the State Shop, and the Defendants or their agents at MOCC, shall provide the Plaintiff with access to review the audio recording as necessary during the course of this litigation. If the Defendants wish to seek the entry of a Protective Order concerning the audio recording, they should submit a proposed Protective Order for entry by the Court.

### G.    Request for Production of Documents No. 15.

REQUEST FOR PRODUCTION NO. 15. Any and all documents concerning the violation report hearing for inmate James Mullins, docket no. MOC-13-0925-G, conducted on the date September 16, 2013.

RESPONSE: Objection. The Plaintiff herein, is not entitled to receive the incident report/violation report hearing for another inmate.

In his Motion to Compel, Plaintiff argues that he "is not requesting any paper documents, but specifically the audio-recording, which is relevant evidence pertaining to facts and defense in this case." (Document No. 65, p. 11.) Plaintiff contends that "[i]n the said recording, during this hearing is an MOCC guard admitting to enforcing martial law, and that defendant Ballard, or other supervisors, ordered and/or declared said policy or custom (note: audio-recordings from disciplinary hearings are retained for a period of two (2) years.)" (Id., pp. 11 - 12.) Plaintiff argues that this is not protected information as the plaintiff has put this at issue before the bar." (Id., p. 12.)

In Response, Defendants argue that they "cannot produce a violation report for Inmate James Mullins as that report has nothing whatsoever to do with this plaintiff's case." (Document No. 84,

p. 6.) Defendants further contend that Plaintiff "did not request audio recordings in his request for production of documents, and it is not the policy of the Mount Olive Correctional Complex to produce audio recordings to an incarcerated inmate." (Id.)

In Reply, Plaintiff again argues that Policy Directive 325.00(V)(B)(18) provides that "the hearing proceedings shall be recorded by a stenographer, magnetic tape, or digital recording" and "hearing recordings shall be retained for a period of two (2) years." (Document No. 95, p. 3.) Plaintiff alleges that the hearing is " well within this two year retaining period" and "defendants are in possession of them." (Id.)

The undersigned notes that Plaintiff alleges that Defendants implemented "martial law" and improperly allowed staff discretion to use chemical agents and other riot control weaponry. Plaintiff contends that the above requested audio recording contains evidence proving that correctional officers were acting under "martial law" at the time of his injuries. The undersigned finds this audio recording could contain potentially relevant information. Defendants are **ORDERED** to produced the audio recording involving Inmate James Mullins to the Court for *in camera* review.

Based upon the foregoing, it is hereby **ORDERED** that Plaintiff's Motion to Compel (Document No. 65.) is **GRANTED in part** and **DENIED in part**. Defendants are **ORDERED** to produce any documents responsive to the requests as specifically directed above to the Plaintiff on or before **April 24, 2015**.

In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, the parties are hereby notified that the rulings set forth above may be contested by filing objections to this Order within 14 days. If objections are filed, the District Court, United States District Judge John T. Copenhaver, Jr. presiding, will consider the objections and modify or set aside any portion of the Order which

20

it finds to be clearly erroneous or contrary to law.

The Clerk is hereby directed to mail a copy of this Order to Plaintiff, who is acting *pro se*, and to counsel of record.

ENTER: April 6, 2015.

R. Clarke VanDervort
United States Magistrate Judge