## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

| | | |
|---|---|---|
| **FRED D. DOUTY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 2:13-32832** |
| | ) | |
| **JIM RUBENSTEIN,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's third "Motion to Compel Discovery" (Document No. 75), filed on February 23, 2015. Having thoroughly considered the issues raised by this Motion, the undersigned concludes that Plaintiff's Motion (Document No. 75.) should be granted in part and denied in part.

### STANDARD

The Federal Rules of Civil Procedure contemplate that in conjunction with disclosure, civil discovery is a process of elucidation and clarification of facts and circumstances relevant to claims and defenses as presented in pleadings through which the claims and defenses are validated, defined and shaped and issues are sharpened and refined for consideration at the dispositive motion stage and trial of a civil case. The civil discovery process is to be engaged in cooperatively. Violation of the Rules undermines the process.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides as follows:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery

appears reasonably calculated to lead to the discovery of admissible evidence.

Discovery is generally limited therefore to nonprivileged information which is relevant to any party's claims or defenses, and relevant information is information which is admissible at trial or might reasonably lead to the discovery of information which is admissible at trial. See State ex rel. Erie Ins. Property and Cas. Co. v. Mazzone, 218 W.Va. 593, 596, 625 S.E.2d 355, 358 (2005)("A threshold issue regarding all discovery requests is relevancy. This is so because '[t]he question of the relevancy of the information sought through discovery essentially involves a determination of how substantively the information requested bears on the issues to be tried.'" quoting Syllabus Point 4 of State Farm Mut. Auto. Ins. Co. v. Stephens, 188 W.Va. 622, 425 S.E.2d 577 (1992).)

When parties request relevant nonprivileged information in Interrogatories under Rules 33, their request "must be answered:(A) by the party to whom they are directed." Fed.R.Civ.P. 33(b)(1). Federal Rule of Civil Procedure 33(b)(3) through (5) state further as follows:

> **(3) *Answering Each Interrogatory.*** Each Interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.
> **(4) *Objections.*** The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.
> **(5) *Signature.*** The person who makes the answers must sign them, and the attorney who objects must sign any objections.

"Generic non-specific objections will not suffice when posed in response to reasonable Interrogatories. Objections to reasonable Interrogatories must be specific to each Interrogatory and explain or demonstrate precisely why or how the party is entitled to withhold from answering." Vica Coal Co., Inc., v. Crosby, 212 F.R.D. 498, 503 (S.D.W.Va. 2003). The Court requires strict adherence to these Rules. Saria v. Massachusetts Mutual Life Insurance Company, 228 F.R.D. 536, 538 (S.D.W.Va. 2005).

2

When parties request relevant nonprivileged information in a Request for Production or Inspection of Documents under Rule 34, "[t]he party to whom the request is directed must respond in writing . . .." Fed.R.Civ.P. 34(b)(2)(A). Federal Rule of Civil Procedure 34(b)(2)(B) and (C) provide as follows:

> **(B)** *Responding to Each Item.* For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons.
> **(C)** *Objections.* An objection to part of a request must specify the part and permit inspection of the rest.

Objections to Rule 34 requests must be stated specifically, and boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable. <u>Frontier-Kemper Constructors, Inc., v. Elk Run Coal Company, Inc.,</u> 246 F.R.D. 522, 528 - 529 (S.D.W.Va. 2007).

The Rules anticipate that each objection to a discovery request will state precisely why the request is objectionable in view of the claims and defenses presented in the litigation. In most if not all cases, an objection to a discovery request in conformity with the Rules will contain (1) a recital of the parties' claims and defenses, (2) a summary of the applicable statutory and/ or case law upon which the parties' claims and defenses are predicated including the elements of each claim or defense, (3) a discussion of Court decisions considering the breadth or scope of discovery and any limitations upon discovery in the same or a similar type of case and (4) a statement respecting how and/or why the request seeks information which is irrelevant or will not likely lead to the discovery of relevant information or is vague, overly broad, burdensome or interposed for an improper purpose. Failure to state objections specifically in conformity with the Rules will be regarded as a waiver of those objections. <u>Sabol v. Brooks</u>, 469 F.Supp.2d 324, 328 (D.Md. 2006).

Pursuant to Rule 36, "[a] party may serve on any other party a written request to admit, for

purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1)

relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness

of any described documents." Fed.R.Civ.P. 36(a)(1). Federal Rule of Civil Procedure 36(a)(4) and

(5) provide as follows:

> **(4) Answer.** If a matter is not admitted, the answer must specifically deny it or state
> in detail why the answering party cannot truthfully admit or deny it. A denial must
> fairly respond to the substance of the matter; and when good faith requires that a
> party qualify an answer or deny only a part of a matter, the answer must specify the
> part admitted and qualify or deny the rest. The answering party may assert lack of
> knowledge or information as a reason for failing to admit or deny only if the party
> states that it has made reasonably inquiry and that the information it knows or can
> readily obtain is insufficient to enable it to admit or deny.

> **(5) Objections.** The grounds for objecting to a request must be stated. A party must
> not object solely on the ground that the request presents a genuine issue for trial.

Additionally, Rule 36(a)(6) allows a party who has served a request for admission to move the court

"to determine the sufficiency of an answer or objection. Unless the court finds an objection justified,

it must order that an answer be served." Fed.R.Civ.P. 36(a)(6).

Federal Rule of Civil Procedure 37(a)(1) provides that if a party fails to cooperate in

discovery, "[o]n notice to other parties and all affected persons, a party may move for an order

compelling disclosure or discovery. The motion must include a certification that the movant has in

good faith conferred or attempted to confer with the person or party failing to make disclosure or

discovery in an effort to obtain it without court action." Rule 37(a)(4) provides that an incomplete

answer or response "must be treated as a failure to . . . answer, or respond." Rule 37 (a)(5)(A) – (C)

provide as follows:

> **(A)** *If the Motion is Granted (or Disclosure or Discovery is Provided After Filing).*
> If the motion is granted – or if the disclosure or requested discovery is provided after
> the motion was filed – the court must, after giving an opportunity to be heard, require
> the party or deponent whose conduct necessitated the motion, the party or attorney

advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

> (i)    the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii)   the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii)  other circumstances make an award of expenses unjust.

**(B)** *If the Motion is Denied.* If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

**(C)** *If the Motion is Granted in Part and Denied in Part.* If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses of the motion.

## ANALYSIS

**A.    Fourth Request for Production of Documents Nos. 1 and 2.**

REQUEST FOR PRODUCTION NO. 1. State the names, titles, and duties of all staff members at Mount Olive Correctional Complex (MOCC), who have responsibility for receiving and securing evidence. If those duties are set forth in any job description or other document, produce the document(s).

RESPONSE: CO II Shawn Cook is the Bailiff, and Officer Cook is responsible for receiving and securing evidence at the Mount Olive Correctional Complex.

REQUEST NO. 2. State the procedure in effect during September of 2013 at MOCC for ensuring the taking, receiving, and securing of evidence by staff members. If the procedure is different for segregation inmates or property than for general population inmates or property, state both procedures. If these procedures are set forth in policy, directive, or other document, produce the document(s).

RESPONSE: There is no such procedure or documents responsive to this particular discovery request.

In his Motion to Compel, Plaintiff complains that although "defendants identified Officer Cook as a staff member who has responsibility for receiving and securing evidence, the defendants have failed to disclose Officer Cook's duties regarding this evidence handling." (Document No. 75, p. 2.) Plaintiff further states that "defendants have refused to disclose and produce the policies and procedures in effect at MOCC concerning collection and handling of evidence." (Id.) Plaintiff claims that these policies or procedures exist and are relevant because "defendants allege photos taken by officers have mysteriously disappeared." (Id., p. 3.) Plaintiff states that "[t]he documents in question will disclose what happened to these photos and where they may be." (Id.)

In Response, Defendants argue that they "have now produced as Exhibit A, State of West Virginia Division of Corrections Policy Directive 314.01." (Document No. 87, p. 2.) Defendants explain that this "policy directive deals with the preservation of physical evidence at the Mount Olive Correctional Complex, and would govern the responsibilities of Correctional Officer II Shawn Cook, as previously disclosed to the Plaintiff." (Id.)

In Reply, Plaintiff complains that Policy Directive 314.01 "raises more questions than answers due to the vagueness and ambiguity of said policy." (Document No. 96, p. 1.) Plaintiff explains that Policy Directive 314.01 "does not identify the appropriate location for evidence storage; nor its requirements for evidence placement." (Id.) Plaintiff states that "[t]his leaves one to speculate whether the evidence location is at the prison, or one of the numerous state facilities, or some other building, body, or agency off prison grounds." (Id.) Plaintiff claims that "defendants need to produce any and all policies, procedures, memos, or other documents relating to this issue." (Id.)

The undersigned finds that Plaintiff's Motion to Compel regarding Request for Production Nos. 1 and 2 should be denied. Defendants initially responded that there was no procedure in effect concerning the taking, receiving, and securing of evidence by staff members. In Response to Plaintiff's Motion, Defendants supplemented their Response providing Policy Directive 314.01 and stating that this directive would govern the duties and responsibility of Officer Cook. The undersigned notes that defense counsel properly signed the discovery responses certifying that his responses were complete and correct. Furthermore, by prior Order, the undersigned has directed Defendants to explain the status of certain photographs that Plaintiff alleges to exist. The Court, therefore, finds that Defendants appropriately responded to Plaintiff's discovery request. It is hereby **ORDERED** that Plaintiff's Motion to Compel regarding Requests for Production Nos. 1 and 2 is **DENIED**.

**B.      Fourth Request for Production of Documents No. 3.**

> REQUEST FOR PRODUCTION NO. 3. State the names, titles, and duties of all staff members at MOCC who have responsibilities for responding to and/or investigating inmates' injuries sustained by staff members. If those duties are set forth in any job description, policy, directive, or other document, produce the document(s).

> RESPONSE: Objection. This particular interrogatory as phrased is incomprehensible. Subject to and without waiving said objection, these Defendants cannot respond to this discovery request as there are no such enumerated duties or any documents responsive thereto.

> In his Motion to Compel, Plaintiff rephrased his request as follows:

> State the names, titles, and duties of all staff members at MOCC who have responsibility for responding to and/or investigating any and all claims made via grievance letter, or other written communication, or verbally to any person, agent or body, stating that an inmate suffered injuries from a staff member or another inmate. If those duties are set forth in any job description, policy, directive, or other document, produce the document(s).

(Document No. 75, p. 4.) Plaintiff argues that such policies or directives do exist and Defendants

7

must produce them. (Id.) Plaintiff further contends that the above documents are relevant "as they are directly in connection to Plaintiff's claims against the supervisory defendants and their mismanagement and malfeasance." (Id.)

In Response, Defendants produced as Exhibit B, the State of West Virginia, Division of Correction's Policy Directive 335.00 pertaining to Inmate Grievance Procedures. (Document No. 87, p. 2.) Defendants argue that "Plaintiff should already be familiar with this particular document as each inmate at the time of the beginning of his incarceration is given an explanation as to how to file a grievance." (Id.) Defendants contend that the foregoing is responsive to Plaintiff's request. (Id.)

In Reply, Plaintiff argues that "defendants are attempting to hoodwink both the plaintiff and this Court by introducing an extraneous document marked as Exhibit B." (Document No. 96, p. 2.) Plaintiff states that "he seeks documents directly related to ACA Standard No. 4-4420, but defendants have submitted a policy concerning ACA Standard No. 4-4284, in the aforesaid Standards place." (Id.) Plaintiff requests that Defendants be "ordered to produce any and all documents concerning ACA Standard No. 4-4420, or have sanctions issued against them." (Id.)

The undersigned finds that Plaintiff's Motion to Compel regarding Request for Production No. 3 should be denied. Defendants initially objected claiming that his request was incomprehensible. Plaintiff then clarified his request and Defendants supplemented their Response producing Policy Directive 335.00. The undersigned notes that defense counsel properly signed the discovery responses certifying that his responses were complete and correct. In his Reply, Plaintiff specifically states that he is requesting a copy of documents directly related to ACA Standard No. 4-4420. Plaintiff's above Request for Production, however, did not specifically request documents

relating ACA Standard No. 4-4420. To the extent Plaintiff wishes to obtain a copy of these documents, Plaintiff should submit an additional Request for Production within the discovery time period. It is hereby **ORDERED** that Plaintiff's Motion to Compel regarding Request for Production No. 3 is **DENIED**.

## C.    Fourth Request for Production of Documents No. 5.

> REQUEST FOR PRODUCTION NO. 5. State the names and addresses of any persons to whom the Defendants have made any oral or written statements/communications concerning any of the events or happenings referred to in Plaintiff's Complaint. Please also include the date upon which each statement/communication was made, as well as a brief summary of the substance of each statement/communication

> RESPONSE: Objection. The Plaintiff through this particular interrogatory is requesting information that is protected by the attorney-client privilege. Accordingly, there is no information to be provided to the Plaintiff in response to this particular discovery request.

In his Motion to Compel, Plaintiff acknowledges that "defendants are correct that statements/communications between them and their attorney are protected under attorney-client privilege." (Document No. 75, p. 5.) Plaintiff, however, argues that "defendants are incorrect that the privilege extends to statements/communications between the defendants themselves (i.e. incident reports, memorandums, text messages, emails, etc., or any form of verbal communications), in which they have." (Id.) Plaintiff alleges that Defendants have "all made non-privileged statements/communications concerning incidents involving violating Plaintiff's civil rights, and other claims presented in his Amended Complaint." (Id., pp. 5 - 6.) Plaintiff further contends that "statements/communication between defendants and third parties are not protected under any privilege." (Id., p. 6.) Plaintiff alleges that through his independent investigation, "he has uncovered statements/communications between inmates and Defendant Rubenstein; and Governor Earl Ray

Tomblin's office and Defendant Rubenstein." (Id.) Plaintiff argues that Defendants are "unlawfully obstructing and concealing evidence." (Id.)

In Response, Defendants argue "[t]here are no other written communications regarding any of the incidents that are applicable to this case other than the subject incident reports which have already been provided to the Court as part of a Privilege Log." (Document No. 87, p. 3.) Defendants explain that they "are not aware of any other statements, or communications of any kind between this inmate and the Defendants herein including Governor Tomblin's office." (Id.) Therefore, Defendants states that "there are no additional documents responsive to this production request." (Id.)

In Reply, Plaintiff notes that he "mailed a letter to Magistrate Judge R. Clarke VanDervort regarding defendants' 'Privilege Log,' therefore, he respectfully requests this Court to direct its attention to that letter so he is not redundant." (Document No. 96, p. 2.) Plaintiff further states that "the incident reports, and all other documents, in dispute are discoverable material and well within scope of Federal Rules of Civil Procedure surrounding discovery." (Id.) In Plaintiff's Response to Defendants' "Privilege Log," Plaintiff argues that Defendants "must identify a particular privilege that federal courts recognize." (Document No. 97.)

The undersigned finds that Plaintiff's Motion to Compel regarding Request for Production No. 5 should be denied. Plaintiff acknowledges that he is not requesting statements or communications between Defendants and their attorney. Defendants state that all other communications have been provided to the Court as part of the "Privilege Log." By Order entered on March 20, 2015, the undersigned addressed the allegedly confidential documents contained in the "Privilege Log." (Document No. 90.) Accordingly, it is hereby **ORDERED** that Plaintiff's

Motion to Compel regarding Request for Production No. 5 is **DENIED**.

**D.     Fourth Request for Production of Documents No. 10.**

> REQUEST FOR PRODUCTION NO. 10. Identify each and every civil action filed against you as insofar that it pertains to any excessive use of force, martial law, state of emergency, or no efforts to temper against inmates at MOCC or an inmate of the West Virginia Division of Corrections (WVDOC) in the last five years.

> RESPONSE: Objection. While civil actions (numbering 14) have been filed previously, these cases cannot be disclosed as they would reveal the names of other inmates and the plaintiff is housed in the correctional complex near some of these inmates.

In his Motion to Compel, Plaintiff argues that "Defendants' response to this request is laughable and shows their continuous bad faith during discovery of this action." (Document No. 75, p. 6.) Plaintiff argues that he has a constitutional right to obtain public records and court precedent. (Id., p. 7.) Plaintiff explains that "[w]hile Federal Rule of Evidence 404 prohibits plaintiff from introducing evidence of prior use of force incidents to prove that defendants used excessive force against him, such grievances may be introduced for other purposes, 'such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" (Id.) Plaintiff further contends that "prior complaints and grievances against prison officials are unquestionably relevant to the question of whether the supervisory defendants were aware of the subordinate defendants' history of excessive force or abuse." (Id.) Plaintiff notes that "the gravamen of plaintiff's supervisory liability claims are that the supervisory defendants had actual knowledge of the abuse and were put on notice through use of force reports, incident reports, complaints, and grievances." (Id., p. 8.) Finally, Plaintiff states that he "attached exhibit SS with his Amended Complaint naming numerous inmates who may have filed an action against any named defendant at the case at bar to help aid their search." (Id.)

11

In Response, Defendants first argue that "[i]t is the policy of the Mount Olive Correctional Complex that it does not disclose cases involving other inmates to an incarcerated inmate." (Document No. 87, p. 4.) Second, Defendants contend that "[t]he fact that other inmates may have filed miscellaneous civil actions, meritorious or not, alleging excessive force against these Defendants is immaterial to the Plaintiff's case." (Id.) Finally, Defendants argue that Plaintiff's request is over broad and insufficiently tailored. (Id.) Defendants explain that by Order dated February 20, 2015, United States District Judge John T. Copenhaver, Jr., held that Plaintiff's production request seeking "electronically stored information from staff, officers, administrators or bodies concerning investigations, depositions, hearings, and or findings" over a three year period was too broadly drawn. (Id.)

In Reply, Plaintiff states that due to his "housing assignment with MOCC's solitary confinement unit, he does not have direct access to the prison's law library and cannot research this disputed information at the library." (Document No. 96, p. 2.) Plaintiff, therefore, "suggests the defendants produce those names and case numbers of the 14 civil actions in their response and the plaintiff can then use that information to have someone conduct a search of said cases, [but] if any of those 14 civil actions are unpublished the defendants must produce that case." (Id.) Plaintiff contends that this will alleviate any undue burden and still comply with this particular discovery request. (Id.)

The Court first finds that Defendants' objections to the above Request for Production of Documents are without merit. First, Defendants' claim that "[i]t is the policy of Mount Olive Correction Complex that it does not disclose cases involving other inmates to an incarcerated inmate." Next, Defendants object to the above request claiming that it is overly broad and irrelevant.

The Court, however, finds that Request for Production No. 10 requests relevant information. The above requested information is relevant to the supervisory knowledge of misconduct of correctional officers. Thus, information concerning prior lawsuits is potentially admissible or could lead to admissible evidence. See Laws v. Cleaver, 199 WL 33117449 (D.Conn. Nov. 17, 1999)(permitting discovery of defendants' prior disciplinary hearings, administrative actions and any prior lawsuits, but only to the extent that allegations were made for excessive force or mistreating an inmate); Cox v. McClellan, 174 F.R.D. 32, 34-35 (W.D.N.Y. June 11, 1997)(finding that prior complaints made against the defendants and incidents of excessive force by individual defendants are clearly discoverable in Section 1983 actions); Cornelius v. Consol. Rail Corp., 169 F.R.D. 250, 251-52 (N.D.N.Y. 1996)(evidence of prior claims and lawsuits is relevant and discoverable, regardless that it later may be inadmissible at trial). The Court finds Defendants' claim that the foregoing request contains sensitive or confidential information that should not be distributed to the inmate population is insufficient to outweigh the relevancy of the documents. The undersigned further finds that Plaintiff's request is not overly broad. Plaintiff limits his request to civil actions filed in the last five years against each individual Defendant concerning claims of "excessive use of force, martial law, state of emergency, nor no efforts to temper." Further, Defendants acknowledge that there are only 14 civil actions that are responsive to Plaintiff's request. Accordingly, it is hereby **ORDERED** that Plaintiff's Motion to Compel regarding Request for Production No. 10 is **GRANTED**. For each civil action, Defendants shall provide the following information: (i) the court (state and county/city) in which the lawsuit was filed; (ii) the case number and the date on which the case was filed; (iii) the case caption; (iv) a detailed description of the allegations made in the lawsuit against the Defendant; and (v) a description of the resolution of the lawsuit.

**E.      Fourth Request for Production of Documents Nos. 12, 13, 14.**

REQUEST FOR PRODUCTION NO. 12. Produce your complete MOCC and WV DOC personnel file.

RESPONSE: Objection, the plaintiff is not entitled to receive the personnel files of any of the Defendants named herein. Pursuant to 95 CSR 1-4.17, a correctional officer's personnel file is confidential and the availability of the personnel file is restricted to the employee, to administrators and supervisors directly responsible for the employee and to other personnel who need information for the performance of their duties. Consequently, this Defendant objects to any of the personnel files of the individual Defendant, being produced in the subject litigation.

REQUEST FOR PRODUCTION NO. 13. Produce all documents concerning your training, certification(s), physical or mental fitness or condition, or aptitude for employment as a WVDOC commissioner, warden, correctional officer, or staff member with WVDOC or MOCC, including but not limited to any resume, application, or other document used in connection with obtaining employment with the WVDOC or MOCC.

RESPONSE: See Answer to Interrogatory No. 12.

REQUEST FOR PRODUCTION NO. 14. Produce any reprimands, citations, warnings, awards, commendator and any other document related to your job performance with the DOC or MOCC.

RESPONSE: See Answer to Interrogatory No. 12.

In his Motion to Compel, Plaintiff argues that "these requests are gravamen to plaintiff's supervisor liability claims that establish the supervisory defendants had actual knowledge of the abuse but abdicated their duty to supervise, monitor, train, or discipline of subordinates." (Document No. 75, p. 9.) Next, Plaintiff argues that "a state law forbidding disclosure does not create a privilege in federal court and will not be enforced if it is inconsistent with the federal law or privileges." (Id., p. 10.) Finally, Plaintiff contends that "[t]he mere assertion that information is 'confidential' establishes no privilege enforceable in federal court." (Id.)

In Response, Defendants argue that Plaintiff is not entitled to the Defendants' personnel files.

14

(Document No. 87, p. 5.) Defendants explain that their personnel files "include the entire contents of those personnel files concerning every aspect of their employment at Mount Olive Correctional Complex." (Id.) Defendants state that "[i]t has never been the policy of Mount Olive Correctional Complex to disclose the personnel files of correctional officers to incarcerated inmates in any context in any litigation." (Id.) Defendants claim that "[a]s a matter of public policy, it makes no sense for an inmate to be able to inspect personal information concerning employees of the Mount Olive Correctional Complex." (Id.) Defendants assert that they have an individual right of privacy as to each of their respective personnel files. (Id., p. 6.) Defendants acknowledge that if a proper interrogatory or request is propounded, information concerning whether a particular correctional officer has ever been disciplined, suspended or terminated for any reason because of improper use of excessive force against an inmate might be relevant. (Id., p. 5.)

In Reply, Plaintiff argues he "can obtain documents and information about these defendants and their prior records which is relevant to their credibility and other issues." (Document No. 96, p. 2.) Plaintiff acknowledges that he has no objection to "any information concerning defendants' dates of birth, social security numbers, and addresses being redacted." (Id., p. 3.)

Regarding Plaintiffs' above requests seeking the "complete personnel file" for each Defendant, the Court deems certain portions of the file to be relevant. Specifically, the Court finds that any performance reviews, citations/commendations, reprimands, or disciplinary actions for any improper use of force against an inmate by any Defendant is relevant. To the extent Plaintiff requests Defendants' personnel files containing their training, physical or mental fitness/condition, employment history, and applications for employment, the Court finds these requests to be overly broad and irrelevant. It is therefore hereby **ORDERED** that Plaintiffs' Motion to Compel as to

Request for Production Nos. 12, 13, and 14 are **GRANTED in part** and **DENIED in part**. Defendants shall produce any performance reviews, citations/commendations, reprimands, or disciplinary actions for any improper use of force against an inmate by any Defendant. If the Defendants wish to seek the entry of a Protective Order concerning the foregoing, they should submit a proposed Protective Order for entry by the Court.

**F.      Fourth Request for Production of Documents No. 16.**

> REQUEST FOR PRODUCTION NO. 16. Produce a copy of each and every communication, correspondence, letter, note or other writing, of any kind, that you have sent to anyone or received from anyone, other than your counsel, concerning any of the incidents or allegations contained in Plaintiff's Complaint.

> RESPONSE: None.

In his Motion to Compel, Plaintiff argues that "the defendants did make 'written' statements/communications about the incident and allegations concerning the case at bar." (Document No. 75, p. 11.) Plaintiff claims that "the defendants are unlawfully obstructing and unlawfully concealing communications between the defendants and individuals inquiring about the supervisory defendants directly related to plaintiff's claims." (Id.) Plaintiff attaches Exhibit B in support. (Document No. 75-2.) The Court notes that Exhibit B contains a copy of a letter from Commissioner Jim Rubenstein addressed to Inmate Roy Hillberry regarding his letter to Governor Tomblin. (Id.)

In Response, Defendants argue that "there are no other types of communications such as correspondences, letters, notes, or any other type of writings concerning any of the incidents or allegations contained in Plaintiff's Complaint. (Document No. 87, p. 6.) Defendants explain that the "entirety of communication concerning Plaintiff's allegations are contained in the incident reports which have been produced to this Court for its scrutiny and analysis in a Privilege Log." (Id.)

Therefore, Defendants claim "there are no other documents of any kind to produce to the Plaintiff in the context of this civil action." (Id.)

In Reply, Plaintiff argues as that "despite [his] unequivocal proof, Defendants still refuse to produce inmate Roy Hillbery's first letter written to Governor Earl Ray Tomblin or Governor Tomblin's letter to defendant Jim Rubenstein." (Document No. 96, p. 3.) Plaintiff notes that "in Gov. Tomblin's letter he said a copy of Mr. Hillberry's letter was enclosed along with his." (Id.) Finally, Plaintiff argues that "it is hard to believe that defendant Rubenstein, or one of his agents, would not contact defendant David Ballard or his agents, concerning the matters raised in either inmate Hillberry's or Gov. Tomblin's letter." (Id.)

The undersigned finds that Defendants have appropriately responded to Request for Production No. 16. Defendants state that they have conducted a search for the requested documents, but have been unable to find any document responsive to Plaintiff's request. The undersigned notes that defense counsel properly signed the discovery responses certifying that his responses were complete and correct. Defendants note that the "entirety of communications concerning Plaintiff's allegations are contained in the incident report which have been produced to this Court for its scrutiny and analysis in a Privilege Log." By Order entered on March 20, 2015, the undersigned addressed the allegedly confidential documents contained in the "Privilege Log." (Document No. 90.) To the extent Plaintiff relies upon the documents concerning Inmate Hillberry as evidence that Defendants are without holding discovery, the undersigned finds that his claim is without merit. Although the documents concerning Inmate Hillberry reveal that Inmate Hillberry was also claiming that correctional officers at MOCC declared martial law, Plaintiff's Request for Production No. 10 requests information "concerning any of the incidents or allegations contained in Plaintiff's

Complaint." There is no indication that the communications concerning Inmate Hillberry involved any of the incidents or allegations contained in Plaintiff's Complaint. To the extent Plaintiff is requesting any documents or comminations regarding other inmates who have also asserted the same claims as asserted in Plaintiff's Complaint (excessive force, martial law, ect.), his claim is over broad and unduly burdensome. Accordingly, it is hereby **ORDERED** that Plaintiff's Motion to Compel regarding Request for Production No. 16 is **DENIED**.

**G.    Fourth Request for Production of Documents No. 17.**

> REQUEST FOR PRODUCTION NO. 17. Produce any and all documents from MOCC"s Quilliams II unit non-contact visiting rooms insofar as they show Plaintiff's image in said non-contact visiting rooms on the date of October 4, 2013.

> RESPONSE: No such documents exit.

In his Motion to Compel, Plaintiff argues that the requested information is relevant. (Document No. 75, p. 12.) Plaintiff explains the foregoing is relevant because it will show his injuries. (Id.) Plaintiff claims that "[i]n the Quilliams II unit non-contact visiting room a video camera was pointed at the October 4, 2013, attorney visit with Lydia Milnes, Esq." (Id.) Plaintiff asserts that during the visit, he showed Ms. Milnes "all areas on his body where he suffered first degree chemical burns from the September 2, 2013 incident." (Id.) As Exhibit C, Plaintiff attaches a copy of a letter dated October 7, 2013, from Attorney Lydai Milnes following up "regarding our meeting on October 4, 2013." (Document No. 75-3.)

In Response, Defendants state that they "do not have any photographs or images of any kind showing the Plaintiff's image on October 4, 2013. (Document No. 87, p. 7.) Defendants explain that "simply because a video camera was pointed toward the Plaintiff on or about October 4, 2013, does not necessarily imply that the particular camera was indeed operational." (Id.) Defendants state that

"[i]f necessary, these Defendants will produce an affidavit from an employee of the Mount Olive Correctional Complex attesting to the fact that there are no such documents under this Defendants' custody or control." (Id.)

In Reply, Plaintiff argues that "these defendants would brazenly have this Court believe that at the State's only maximum security prison there are no operational video camera in the visiting rooms where inmates and visitors are left alone unsupervised." (Document No. 96, p. 3.) Plaintiff contends that if this is true, "there would be no video to review or evidence to catch any perpetrators" that attempt to destroy property, introduced contraband, perform obscene acts, or escape. (Id.) Plaintiff, therefore, disputes Defendants' claim that no video footage exist. (Id.)

The undersigned finds that Defendants have appropriately responded to Request for Production No. 17. Defendants state that they have conducted a search for the requested documents, but have been unable to find any document responsive to Plaintiff's request. The undersigned notes that defense counsel properly signed the discovery responses certifying that his responses were complete and correct. Defendants, however, do not dispute Plaintiff's claim that the visiting rooms are monitored by security cameras at all times. The undersigned finds that Defendants should conduct a further search to determine whether any photographs or videos exist. To the extent the photographs or videos exist, the undersigned finds that they are relevant and Defendants are **ORDERED** to produce them. If no such photographs or videos exist, or if such photographs or videos existed at one time but no longer exist, the Defendants are **ORDERED** to respond with an explanation as to the status of such evidence. If the Defendants wish to seek the entry of a Protective Order concerning these photographs or videos, they should submit a proposed Protective Order for entry by the Court.

The undersigned acknowledges that the West Virginia Division of Corrections' policy provides that audio and video material received by inmates in the mail from an attorney will not be processed or provided to the inmate. Specifically, the policy memorandum provides as follows:

> After receiving advice from Senior Assistant Attorney General, Charles Houdeyschell, Jr., our policies regarding receipt of audio/video material from an inmate's attorney and the court system have changed as follows:
>
> **Audio/Video material received in the mail from an attorney:**
> This material will no longer be processed. Instead, the material will be returned to the attorney, advising him/her that arrangements may be made to meet with the inmate personally to review the material. The attorney must take the audio/video material with him/her when leaving the facility.
>
> **Audio/Video material received in the mail from a court:**
> These items may be picked up at the State Shop after the package is opened in the inmate's presence to verify that they were mailed for a court. The material will be documented on the inmate's Personal Property record and will be counted as part of allowable compact disks.

To the extent video footage exist, it is hereby **ORDERED** that defense counsel shall hand-deliver a copy of the DVD in question, with proper labeling to indicate that the DVD is evidence in Civil Action No. 2:13-cv-32832 in the United States District Court for the Southern District of West Virginia, and shall review the DVD with the Plaintiff in person, at some point prior to the conclusion of the discovery period. Thereafter, in accordance with the policy memorandum discussed above, it is hereby **ORDERED** that the DVD shall be documented as part of the Plaintiff's Personal Property in the State Shop, and the Defendants or their agents at MOCC, shall provide the Plaintiff with access to review the DVD as necessary during the course of this litigation.

Based upon the foregoing, it is hereby **ORDERED** that Plaintiff's Motion to Compel (Document No. 75.) is **GRANTED in part** and **DENIED in part**. Defendants are **ORDERED** to produce any documents responsive to the requests as specifically directed above to the Plaintiff on

20

or before **April 24, 2015**.

      In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, the parties are hereby notified that the rulings set forth above may be contested by filing objections to this Order within 14 days. If objections are filed, the District Court, United States District Judge John T. Copenhaver, Jr. presiding, will consider the objections and modify or set aside any portion of the Order which it finds to be clearly erroneous or contrary to law.

      The Clerk is hereby directed to mail a copy of this Order to Plaintiff, who is acting *pro se*, and to counsel of record.

      ENTER: April 7, 2015.

R. Clarke VanDervort
United States Magistrate Judge

21